**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
E-mail: swestcot@bursor.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHARLES WASHINGTON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FLIXBUS, INC.,<br><br>Defendant. | Case No. 3:25-cv-00212-H-MSB<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Judge: Hon. Marilyn L. Huff<br><br>Hearing: May 5, 2025<br>Time: 10:30 a.m.<br>Courtroom: 12A |

# TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ..... 1

ARGUMENT ..... 3

I. PLAINTIFF ALLEGES AN INJURY-IN-FACT ..... 3

II. PLAINTIFF'S CLAIMS ARE NOT PREEMPTED ..... 7

A. Defendant Mischaracterizes the Claims As Relating to The ICCTA ..... 8

B. Plaintiff's Claims Are Unrelated to Defendant's Services Under the ICCTA ..... 9

III. PLAINTIFF DID NOT CONSENT TO THE DISCLOSURE OF HIS PASSENGER MANIFEST RECORD INFORMATION ..... 10

A. Plaintiff Did Not Consent to the Disclosure of His Protected Passenger Manifest Record Information ..... 11

B. Plaintiff's Consent to Facebook's Terms of Service Does Not Extend to Defendant's Conduct Here ..... 13

C. The Class Action Waiver is Unenforceable ..... 13

IV. PLAINTIFF STATES A CLAIM UNDER CIPA § 631 ..... 15

A. The First Clause of CIPA § 631(a) Applies to Defendant's Online Wiretaps ..... 15

B. "Abetting" is Not An Element of § 631(a)(4) ..... 16

C. Plaintiff Alleges That His Communications Were Intercepted "In Transit" ..... 18

D. Meta Intercepted the "Contents" of Plaintiff's Communications ..... 19

V. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY ..... 21

CONCLUSION ..... 23

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**


*Altria Grp., Inc. v. Good*,
555 U.S. 70 (2008) .......... 10

*Armstrong v. Allied Ins. Co.*,
2014 WL 12591844 (C.D. Cal. Aug. 19, 2014) .......... 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 2, 3

*B.D. v. Blizzard Ent., Inc.*,
76 Cal. App. 5th 931 (2022) .......... 14

*Barbour v. John Muir Health*,
2023 WL 2618967 (Cal. Super. Ct. Jan. 5, 2023) .......... 19

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... 12

*BNSF Ry. Co. v. California Dep't of Tax & Fee Admin.*,
904 F.3d 755 (9th Cir. 2018) .......... 10

*Brown v. Google LLC*,
2023 WL 5029899 (N.D. Cal. Aug. 7, 2023) .......... 19

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) .......... 19

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023) .......... 15

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 18

*Capps v. JPMorgan Chase Bank, N.A.*,
2023 WL 3030990 (E.D. Cal. Apr. 21, 2023) .......... 12

*Carlsen v. Gamestop, Inc.*,
833 F.3d 903 (8th Cir. 2016) .......... 7

*Charas v. Trans World Airlines, Inc.*,
160 F.3d 1259 (9th Cir. 1998) .......... 9

*Coulter-Owens v. Time Inc.*,
695 F. App'x 117 (6th Cir. 2017) .......... 7

*Cousin v. Sharp Healthcare*,
681 F.Supp.3d 1117 (S.D. Cal. 2023) .......... 16, 17

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) .......... 6

*Dan's City Used Cars, Inc. v. Pelkey*,
569 U.S. 251 (2013) .......... 2, 7, 8, 9

*Dilts v. Penske Logistics, LLC*,
769 F.3d 637 (9th Cir. 2014) .......... 9

*DiNaples v. MRS BPO, LLC*,
934 F.3d 275 (3d Cir. 2019) .......... 6

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 13

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .......... 6

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal.App.4th 986 (2011) .......... 7

*Foman v. Davis*,
371 U.S. 178 (1962) .......... 23

*Gaczyk v. West Pub. Co.*,
660 F.3d 275 (7th Cir. 2011) .......... 7

*Garey v. James S. Farrin, P.C.*,
35 F.4th 917 (4th Cir. 2022) .......... 6

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) .......... 14

*Gompper v. VISX, Inc.*,
298 F.3d 893 (9th Cir. 2002) .......... 3

*Heglund v. Aitkin County*,
871 F.3d 572 (8th Cir. 2017) .... 6

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) .... 21

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .... 19, 20

*In re Cell Tower Litig.*,
2012 WL 1903883 (S.D. Cal. May 24, 2012) .... 16

*In re Facebook, Inc., Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .... 5, 19, 20

*In re: Google, Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3d Cir. 2019) .... 5

*In re Google, Inc. Privacy Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .... 22

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .... 19, 20

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F.Supp.3d 1204 (C.D. Cal. Mar. 2, 2017) .... 21

*In re Yahoo Mail Litig.*,
7 F.Supp.3d 1016 (N.D. Cal. 2014) .... 7, 18

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .... 20

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) .... 11

*Jackson v. LinkedIn Corp.*,
744 F. Supp. 3d 986 (N.D. Cal. 2024) .... 15

*James v. Walt Disney Co.*,
2023 WL 7392285 (N.D. Cal. Nov. 8, 2023) .... 5

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) .... 16

*Katz-Lacabe v. Oracle Am., Inc.*,
2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) .......... 6

*Kauffman v. Papa John's Int'l, Inc.*,
2024 WL 171363 (S.D. Cal. Jan. 12, 2024) .......... 15, 16

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) .......... 12, 15

*Licea v. American Eagle Outfitters, Inc.*,
2023 WL 2469630 (C.D. Cal. Mar. 7, 2023) .......... 6

*Licea v. Cinmar, LLC*,
2023 WL 2415592 (C.D. Cal. Mar. 7, 2023) .......... 6

*Lightoller v. Jetblue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. June 12, 2023) .......... 5

*Massie v. Gen. Motors LLC*,
2022 WL 534468 (D. Del. Feb. 17, 2022) .......... 5

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) .......... 15

*Morrison v. Yippee Ent., Inc.*,
756 F. Supp. 3d 842 (S.D. Cal. 2024) .......... 14

*Nat'l Fed'n of the Blind v. United Airlines Inc.*,
813 F.3d 718 (9th Cir. 2016) .......... 9

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......... 11, 13

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) .......... 12

*Padron v. Lara*,
2018 WL 2213462 (E.D. Cal. May 11, 2018) .......... 21

*Persinger v. Southwest Credit Systems, L.P.*,
20 F.4th 1184 (7th Cir. 2021) .......... 6

*Raffin v. Medicredit, Inc.*,
2016 WL 7743504 (C.D. Cal. Dec. 19, 2016) .......... 4

*Rahman v. Marriott Int'l, Inc.*,
2021 WL 346421 (C.D. Cal. Jan. 12, 2021) .......... 7

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019).......... 17, 19, 20

*Sadlock v. Walt Disney Co.*,
2023 WL 4869245 (N.D. Cal. July 31, 2023).......... 14

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444 (2021).......... 11, 12, 14

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) .......... 16

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 3, 4, 5

*St. Aubin v. Carbon Health Technologies, Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024).......... 18

*Steel Co. v. Citizens for a Better Environment*,
523 U.S. 83 (1998) .......... 3

*Stover v. Experian Holdings, Inc.*,
978 F.3d 1082 (9th Cir. 2020).......... 11

*Taylor v. Acxiom Corp.*,
612 F.3d 325 (5th Cir. 2010).......... 7

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) .......... 3, 4, 6

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008).......... 20

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023).......... 18

*Vermont Agency of Natural Resources v. U.S. ex. rel. Stevens*,
529 U.S. 765 (2000) .......... 3

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) .......... 6

*Yoon v. Lululemon USA, Inc.*, 549 F.Supp.3d 1073 (C.D. Cal. July 15, 2021) ........ 20

**STATUTES**

49 U.S.C. § 14501 ........ 2, 8, 9, 10

49 U.S.C. § 13102 ........ 8

49 U.S.C. § 13103 ........ 8, 9

Article III of the U.S. Constitution ........ 1, 3, 5

Cal. Civil Code § 53.5 ........ passim

Cal. Civil Code § 53.5(b) ........ 21

Cal. Civil Code § 53.5(d) ........ 22

Cal. Penal Code § 631 ........ 1

Cal. Penal Code § 631(a) ........ 19

**RULES**

Fed. R. Civ. P. 8(a)(2) ........ 2

Fed. R. Civ. P. 12(b)(6) ........ 3

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 652B ........ 4

## INTRODUCTION

This is a putative class action lawsuit brought by Plaintiff Charles Washington ("Plaintiff") against Defendant FlixBus, Inc. ("FlixBus" or "Defendant") on behalf of all California residents who have a Facebook account and accessed Defendant's website, www.flixbus.com and to book travel arrangements. (ECF No. 1) ("Compl.") ¶¶ 1, 58. Defendant aids, employs, agrees with, or otherwise enables a third party, Meta Platforms, Inc. ("Facebook"), to eavesdrop on communications sent and received by Plaintiff and Class Members. Compl. ¶¶ 2–4, 30–31, 32–49. These include communications that contain sensitive and confidential information – i.e., "passenger manifest records," as defined by Cal. Civil Code § 53.5. Compl. ¶¶ 2–4, 19–22. By failing to procure consent before enabling Facebook to intercept these communications, Defendant violated Cal. Penal Code § 631 (the "California Invasion of Privacy Act" or "CIPA") and the right to privacy set out in the California Constitution. Compl. ¶¶ 67–87. Defendant argues, in its Motion to Dismiss (ECF No. 6) ("MTD") that (1) Plaintiff lacks standing and (2) that Plaintiff failed to allege plausible CIPA and Invasion of Privacy claims. MTD at 1–2.

***First***, Defendant argues that Plaintiff lacks standing under Article III of the U.S. Constitution. In support, Defendant contends that "Plaintiff's allegations . . . fail to implicate a protectible privacy interest." MTD at 5. But Plaintiff clearly alleges Defendant "violated CIPA by aiding and permitting third parties [i.e. Facebook] to receive its customers' sensitive and confidential online communications regarding their trip details through www.flixbus.com without their consent." Compl. ¶ 78. This disclosure was both a statutory violation under CIPA, and a violation of Plaintiff and Class Members privacy interest in maintaining the confidentiality of their passenger manifest records under California Civil Code §53.5.

***Second***, Defendant argues that Plaintiff fails to allege a violation of CIPA § 631 or an invasion of privacy claim. Per Defendant, Plaintiff's claims are preempted

under the ICCTA because "they relate to FlixBus's 'services' and arise from Plaintiff's interstate travel and the transportation of Plaintiff's property." MTD at 7. However, the Supreme Court recognized 49 U.S.C. §14501 does not preempt claims that impact services in a "tenuous, remote, or peripheral . . . manner,'" as is the case here. *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 261 (2013). Defendant also argues, incorrectly, that Plaintiff consented to its data practices. MTD 11–15. However, Plaintiff's complaint expressly details how Defendant failed to provide reasonably conspicuous notice to website users of its data practices. Compl. ¶¶ 49–57. Moreover, Defendant has failed to meet its burden to show notice of and assent to the purported privacy disclosures on which it attempts to rely. Defendant's assertion that the class action waiver bars Plaintiff's claims fails for the same reasons. MTD at 14–15. Defendant also alleges Plaintiff failed to allege a plausible CIPA Claim. MTD at 15–21. Contrary to Defendant's allegations, Plaintiff's complaint details how Defendant assisted third party, Facebook, in intercepting sensitive communications in which Plaintiff and Class Members have a legally protected privacy interest (i.e., passenger manifest information in violation of Cal. Civ. Code §53.5) while the communication was in transit to Defendant, constituting a violation of CIPA and an invasion of privacy under the California Constitution.

Here, Plaintiff desired and reasonably expected that his communications would be confined to him and FlixBus because Cal. Civil Code § 53.5 mandates that "passenger manifest records" are confidential. Accordingly, the Court should deny Defendant's motion in its entirety.

## LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but a complaint must provide sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations

omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Federal Rule of Civil Procedure 12(b)(6) provides a mechanism to test the legal sufficiency of the averments in a complaint. Dismissal is appropriate only when the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating a complaint, the court must accept all its material allegations as true and construe them in the light most favorable to the non-moving party. *Iqbal*, 556 U.S. at 678. When a plaintiff has failed to state a claim upon which relief can be granted, leave to amend should be granted unless "the complaint could not be saved by any amendment." *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) (internal quotations omitted).

## ARGUMENT

### I. PLAINTIFF ALLEGES AN INJURY-IN-FACT[1]

Defendant argues Plaintiff lacks standing because "a statutory violation (CIPA or otherwise) alone does not satisfy the injury in fact prong of Article III standing. MTD at 5. However, such an assertion mischaracterizes the nature of Plaintiff's claims.

"Article III's restriction of the judicial power to 'Cases' and 'Controversies' is properly understood to mean 'cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process.'" *Vermont Agency of Natural Resources v. U.S. ex. rel. Stevens*, 529 U.S. 765, 774 (2000) (quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102 (1998)). To satisfy Article III, "plaintiffs must demonstrate, among other things, that they have suffered a concrete injury." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021). To be concrete, an injury "must actually exist"; that is, it must be "real, and not abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (internal quotations omitted). "The most

[1] Plaintiff withdraws his claim for injunctive relief.

obvious are traditional tangible harms, such as physical harms and monetary harms." *TransUnion LLC*, 141 S. Ct. at 2204. Although less obvious, "[v]arious intangible harms can also be concrete." *Id*. An intangible harm is concrete when it "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 578 U.S. at 341.

Plaintiff alleges that Meta offers companies, like Defendant, "bits of code that [they] can integrate into their website, mobile applications, and servers, thereby enabling Facebook to intercept and collect user activity on those platforms." Compl. ¶ 27. Plaintiff provides examples of the information consumers provide when purchasing their tickets on Defendant's Website. *See id.*, Figures 2–3. Plaintiff further alleges that "Defendant assisted Facebook with intercepting his communications, including communications that contained his personally identifiable information and details regarding his private travel itinerary. Such details include the departure and return date, the origin and destination cities, and the number of travelers in his party." *Id.* ¶ 7. And to leave no room for confusion, Plaintiff includes examples of network traffic to Meta when a consumer is completing the booking process. *Id.*, Figures 2–3. Moreover, Plaintiff specifically alleges that Defendants "violated CIPA by aiding and permitting third parties [i.e. Meta] to receive its customers' sensitive and confidential online communications regarding their trip details through www.flixbus.com without their consent." *Id.* ¶ 78. Such a disclosure was not merely a technical statutory violation, but also a serious invasion of privacy. *See id.* ¶¶ 9, 86.

Plaintiff has standing to bring his wiretapping claims because his injury bears a close relationship to intrusion upon seclusion. *See TransUnion LLC*, 594 U.S. 413, 425 (2021). The prevailing view is that a wiretap, by itself, constitutes a concrete injury. *See, e.g.,* Restatement (Second) of Torts § 652B, cmt. B (listing examples of intrusion upon seclusion, including "tapping…phone lines" and "opening…private and personal mail"); *Raffin v. Medicredit, Inc.*, 2016 WL 7743504, at *3 (C.D. Cal.

Dec. 19, 2016) ("Following *Spokeo*, district courts in the Ninth Circuit consistently have concluded that, to satisfy injury in fact, a plaintiff in a CIPA action need not allege actual harm beyond the invasion of the private right conferred by the statute."). More recently, some courts have held that a wiretap alone is insufficient, requiring that the communications also contain private or personal information. *See, e.g., Massie v. Gen. Motors LLC*, 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022) ("'Eavesdropping' on communications that do not involve personal information, personally identifiable information or information over which a party has no reasonable expectation of privacy does not amount to a concrete injury."); *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (same).

Under either standard, however, Plaintiff still establishes a concrete injury by alleging that Defendant disclosed his "passenger manifest record" information, which is protected information under California law. *See, e.g.,* Compl. ¶ 8 ("Defendant breached its duty of confidentiality and unlawfully disclosed Plaintiff's personally identifiable information and sensitive trip details (i.e. 'passenger manifest records' under Cal. Civil Code § 53.5.")). Such information was disclosed "without Plaintiff's knowledge, consent, or express written authorization." *Id.* ¶ 7. Taken together, under any standard, these allegations are enough to show concrete injury. *See, e.g., In re: Google, Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019) ("History and tradition reinforce that a concrete injury for Article III standing purposes occurs when Google, or any other third party, tracks a person's internet browser activity without authorization."); *In re Facebook, Inc., Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020)[2] ("Violations of the right

[2] *In re Facebook* is still good law after *TransUnion*. "Nothing about *TransUnion* guts the [] holding in *Facebook*, particularly because *Facebook* postdates *Spokeo*, the precedent on which *TransUnion* largely relied. Furthermore, the Ninth Circuit has not disavowed *Facebook* in the wake of *TransUnion*." *James v. Walt Disney Co.*, 2023 WL 7392285, at *5 (N.D. Cal. Nov. 8, 2023). As such, courts have continued to hold that plaintiffs who allege violations of state and federal wiretapping statutes

to privacy have long been actionable at common law."); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (same).

*TransUnion* reinforces Plaintiff's position. In *TransUnion*, the Supreme Court considered whether two groups of class members bringing claims under the Fair Credit Reporting Act suffered a concrete injury in fact under Article III. *TransUnion*, 141 S. Ct. at 2208–2213. The first group had a misleading credit report "disseminated to third parties." *Id.* at 2208–09. The second group merely had a misleading remark on their credit files that was not disseminated to a third party. *Id.* at 2209. The Supreme Court held that the first group suffered a concrete injury in fact, but not the second. *Id.* ("In short, the 1,853 class members whose reports were disseminated to third parties suffered a concrete injury in fact under Article III."). It is therefore unsurprising that with near unanimity, circuit courts agree that Article III is satisfied by alleging "the unlawful disclosure of confidential information." *See, e.g.*, *DiNaples v. MRS BPO, LLC*, 934 F.3d 275, 281 (3d Cir. 2019); *Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 922 (4th Cir. 2022) (holding that the plaintiffs possessed standing to bring their DPPA claim because the statute "is aimed squarely at the right of the plaintiff, in the phrase coined by Judge Cooley, 'to be let alone'") (internal quotations omitted); *Persinger v. Southwest Credit Systems, L.P.*, 20 F.4th 1184, 1192 (7th Cir. 2021) (holding that the plaintiff possessed standing to bring a claim under the Fair Credit Reporting Act because "[a]n unauthorized inquiry into a consumer's propensity-to-pay score is analogous to the unlawful inspection of one's mail, wallet, or bank account"); *Heglund v. Aitkin County*, 871 F.3d 572, 578 (8th Cir. 2017) (holding that the plaintiffs "have standing to bring their DPPA claim"

---

have suffered a concrete harm sufficient for Article III standing. *See, e.g.*, *Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 2838118, at *5–6 (N.D. Cal. Apr. 6, 2023); *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962 (N.D. Cal. 2023); *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *3 (S.D. Cal. Oct. 24, 2023); *Licea v. Cinmar, LLC*, 2023 WL 2415592, at *3 (C.D. Cal. Mar. 7, 2023); *Licea v. American Eagle Outfitters, Inc.*, 2023 WL 2469630, at *3 (C.D. Cal. Mar. 7, 2023).

because "[a]n individual's control of information concerning her person—the privacy interest the Heglunds claim here—was a cognizable interest at common law"); *Coulter-Owens v. Time Inc.*, 695 F. App'x 117, 121 (6th Cir. 2017) (holding "the disclosure of [subscriber] information is a cognizable injury in fact for purposes of Article III standing."); *Carlsen v. Gamestop, Inc.*, 833 F.3d 903, 909 (8th Cir. 2016) (holding a plaintiff possessed standing to bring a claim under Minnesota's Consumer Fraud Act where defendant "systematically disclos[ed] Game Informer's users' PII…to third party Facebook and/or allowing Facebook to directly collect that information itself.") (internal quotations omitted); *Gaczyk v. West Pub. Co.*, 660 F.3d 275, 278 (7th Cir. 2011) (holding plaintiffs had standing to sue because "[t]he DPPA protects individuals from certain uses or disclosures of their personal information"); *Taylor v. Acxiom Corp.*, 612 F.3d 325, 340 n. 15 (5th Cir. 2010) (same).

The authority relied upon by Defendant in support of its position is telling. Indeed, *none* of the cases cited by Defendant concern the disclosure of *protected* information. *See In re Yahoo Mail Litig.*, 7 F.Supp.3d 1016, 1038 (N.D. Cal. 2014) (no actionable claim for invasion of privacy where legally protected information was not disclosed); *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal.App.4th 986, 992 (2011) (same); *Rahman v. Marriott Int'l, Inc.*, 2021 WL 346421, at *1–2 (C.D. Cal. Jan. 12, 2021) (same).

## II. PLAINTIFF'S CLAIMS ARE NOT PREEMPTED

Defendant alleges "Plaintiff's claims are barred by the ICCTA's express preemption clause because they relate to [Defendant's] 'services' and arise from Plaintiff's interstate travel and the transportation of Plaintiff's property." MTD at 7. That is wrong. In interpreting § 14501, the Supreme Court has long cautioned that it "does not preempt state laws affecting carrier prices, routes, and services 'in only a 'tenuous, remote, or peripheral . . . manner,''" as is the case here. *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 261 (2013). Further, if Congress had intended for

§ 14501 to be all encompassing as Defendant contends, they would not have included § 13103 which provides for cumulative remedies.

**A. Defendant Mischaracterizes the Claims As Relating to The ICCTA**

Defendant argues that because it is a "broker" under the ICCTA that "Plaintiff's claims are preempted because they are related to [broker] services." That is wrong, as Plaintiff's claims are grounded in privacy.

Title 49 governs transportation which is defined to include:

> (A) a motor vehicle . . . related to the movement of passengers or property, or both, regardless of ownership or an agreement concerning use; and
>
> (B) services related to that movement, including . . . interchange of passengers and property.

49 U.S.C. § 13102. The Supreme Court has cautioned that to fit within the definition of transportation sufficient to be governed by Title 49, the challenged conduct must be closely tied to the actual movement and handling of goods and passengers. *See, e.g., Dan's City Used Cars,* 569 U.S. at 252–53.

Contrary to Defendant's allegations, the conduct here relates to Defendant maintaining the confidentiality of passenger's sensitive travel details by prohibiting unauthorized disclosure to third parties, including Facebook. Compl. ¶ 4. While a bus company's broker services facilitate transportation, an individual's use of a website typically involves personal, one-time bookings with limited data sharing, and the bus company's disclosure of data to a third party is conduct pertaining to broader business or marketing purposes rather than the broker service. *See Dan's City Used Cars, Inc*, 569 U.S. at 255 (explaining the conduct of the tow company in disposing of a car via sale was not preempted under 49 U.S.C. § 14501 because it did not "sufficiently relate to [the] towing company's service"). Because the claims do not impact Defendant's ability to arrange for transportation of persons or property, Plaintiff's claims fall outside of the scope of 49 U.S.C. § 14501. As such, they are expressly permitted by the "Remedies as Cumulative" section of Title 49. 49 U.S.C.

§ 13103 ("Except as otherwise provided in this part, the remedies provided under this part are in addition to remedies existing under another law or common law").

### B. Plaintiff's Claims Are Unrelated to Defendant's Services Under the ICCTA

Defendant posits, incorrectly, that because the "statutory language of the ICCTA has been interpreted consistently with decisions interpreting the Airline Deregulation Act" that the claims are preempted because they are "related to [Defendant's] Services. MTD at 8. This argument fails for two reasons.

***First***, Defendant's reading of the words "related to" is overly broad. As the Supreme Court acknowledged in *Dan's City Used Cars*, "the breadth of the words 'related to' does not mean the sky is the limit." 569 U.S. at 260. The Supreme Court went on to explain § 14501 does not "preempt state laws affecting carrier prices, routes, and services in only a tenuous, remote, or peripheral . . . manner." *Id*. at 261. Similarly, Ninth Circuit guidance on this issue has held "Congress did not intend to preempt generally applicable state transportation, safety, welfare, or business rules that do not otherwise regulate prices, routes, or services." *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 644 (9th Cir. 2014). Plaintiff's claims should not be preempted because to hold otherwise would effectively shield motor carriers and brokers from all liability in a manner inconsistent with Congressional intent. This is further supported by the inclusion of 49 U.S.C. § 13103 which permits cumulative remedies.

Second, Defendant's interpretation of what constitutes a "service" under the ADA is irreconcilable with the Ninth Circuit's case *Charas* and its progeny. *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259 (9th Cir. 1998). Critically, in *Charas*, the Ninth Circuit explained that the term service "refers to such things as the frequency and scheduling of transportation, and to the selection of markets to or from which transportation is provided . . . To interpret 'service' more broadly is to ignore the context of its use; and, it effectively would result in the preemption of virtually everything an airline does." *Id*. at 1265–66; *Nat'l Fed'n of the Blind v.*

*United Airlines Inc*., 813 F.3d 718, 726 (9th Cir. 2016) (upholding the *Charas* definition of services). To extend § 14501 to encompass an individual's use of a website, which relates to broader business or marketing purposes rather than the broker service (i.e. connecting the bus service with the customer) would be improper because a consumer's use of a website does not impact the frequency, scheduling, or selection of markets for transportation. Similarly, California Civil Code § 53.5, upon which Plaintiff's CIPA claim relies, does not impact the "services" offered by Defendant, it merely prohibits owners, operators, and agents of a bus transportation company from improperly disclosing consumer information to third parties.

Because the text of 49 U.S.C. § 14501 is susceptible to a plausible reading in which the claims before this Court are not preempted, this Court should hold Plaintiff's suit is not preempted. *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008) ("when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors pre-emption.'"); *BNSF Ry. Co. v. California Dep't of Tax & Fee Admin.*, 904 F.3d 755, 759 (9th Cir. 2018) (the ICCTA does not "preempt state or local laws if they are laws of general applicability that do not unreasonably interfere with interstate commerce.").

## III. PLAINTIFF DID NOT CONSENT TO THE DISCLOSURE OF HIS PASSENGER MANIFEST RECORD INFORMATION

Defendant argues that Plaintiff cannot state a claim under CIPA § 631 or the California Constitution for invasion of privacy because he failed to plead facts supporting his conclusory allegation that he "did not consent." MTD at 11. Defendant's assertion overlooks Section E of the Complaint, wherein Plaintiff describes how "Defendant does not provide reasonably conspicuous notice to users of its Terms & Conditions" due, in part, to its inclusion of a checkout timer. Compl. ¶¶ 53–57.

As a threshold matter, Defendant linking the Terms & Conditions and Privacy Policy at the bottom of the page is inconsequential to this Court's inquiry. MTD at

11. Ninth Circuit precedent on this matter is clear, "consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound." *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1100 (9th Cir. 2023) (*quoting Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171, 1179 (9th Cir. 2014)).

### A. Plaintiff Did Not Consent to the Disclosure of His Protected Passenger Manifest Record Information

Defendant erroneously contends Plaintiff consented to Defendant aiding and assisting Facebook's eavesdropping because "[d]uring the check-out process, purchasers must click on a check-box to 'declare to have read the Privacy Policy and . . . agree to the T&C of Booking and T&C of Carriage.'" MTD at 11. That is wrong, as Defendant's terms are insufficient to put Plaintiff on notice that her legally protected passenger manifest record information would be disclosed to third parties.

As a threshold matter, the existence of the countdown timer on Defendant's checkout page did not give consumers, including Plaintiff, a reasonable opportunity to review the terms for which it intended to bind them to. The Court should find the terms unenforceable on these grounds alone. *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1086 (9th Cir. 2020) ("[T]he party alleging the existence of a contract [] has the burden to prove each element of a valid contract—including mutual assent."). Moreover, "an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 462 (2021). Here, the titles of the documents alone are insufficient to indicate the content of the provisions within, and, given the pressure the countdown timer provides, Plaintiff and consumers are unable to unambiguously manifest consent within the ten-minute period. *See* Compl. ¶¶ 53–57. The design and content of a website play a crucial role in providing users with sufficient

opportunity to read the agreement, and here, Defendant's Website did the opposite. *See generally Oberstein v. Live Nation Ent., Inc*., 60 F.4th 505 (9th Cir. 2023).

Further, the burden is on the Website Operator to show actual knowledge of the contract or, in the alternative, to show: (1) the consumer had reasonably conspicuous notice of the terms and (2) the user took some action to unambiguously manifest assent. *Capps v. JPMorgan Chase Bank, N.A*., 2023 WL 3030990, at *3–4 (E.D. Cal. Apr. 21, 2023) (citations omitted); *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855–58 (9th Cir. 2022). In doing so, the context of the transaction is a non-dispositive factor under California law, used to evaluate whether a website's notice is sufficiently conspicuous. *Keebaugh v. Warner Bros. Ent. Inc.,* 100 F.4th 1005, 1019 (9th Cir. 2024).

Defendant's claim that "if the website times out, [consumers] can simply take their time to read the terms and policies and start the check-out process over" (MTD at 13) is without merit, as it disregards the underlying principles of established precedent on the analysis of internet contracts. *Sellers*, 73 Cal. App. 5th at 462. Defendant's Privacy Policy is more than 13,000 words long and the T&C of Booking is another 4,000 words long. Compl. ¶ 54. Using the average reading speed of an adult, approximately 238 words per minute, a consumer would need more than 70 minutes to read the two policies. *See id*. ¶ 55. Because a user must fill out the first four sections of the checkout screen before the button for the terms even appears, this means Defendant expects a consumer to start the checkout process more than seven times, just to read the terms and privacy policy. *See id*. at 51. More importantly, Defendant has failed to cite *any* provision within its terms explicitly notifying consumers that their protected passenger manifest record information would be disclosed to third parties. There is none. Accordingly, Plaintiff and members of the putative class could not have consented to practices that Defendant did not provide notice of.

### B. Plaintiff's Consent to Facebook's Terms of Service Does Not Extend to Defendant's Conduct Here

Defendant's argument concerning Plaintiff's agreement to Facebook's terms fails as well for two reasons.

***First***, Defendant is not insulated from liability because contracts cannot exempt anyone from responsibility for their own fraud, willful injury, or violation of law, whether willful or negligent. *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023) ("all contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law"). Here Plaintiff alleges Defendant is expressly violating state law (i.e. CIPA, Cal. Civ. Code § 53.5, and the California Constitution), such that Defendant cannot use Facebook's terms to try and insulate itself from liability.

***Second,*** unlike the present action, in *Lloyd*, Facebook was a party to the action and the *Lloyd* plaintiff's interactions dealt directly with her use of Facebook's website. Thus, her use of Facebook's website was governed by Facebook's Terms. In contrast, here, Defendant is alleging Plaintiff is bound by Facebook's terms *in arguendo*, if Defendant's own terms do not apply (they should not). Moreover Defendant fails to cite *any* terms from Facebook's policies that would insulate it from liability here.

### C. The Class Action Waiver is Unenforceable

Defendant asserts Plaintiff's class claims are barred by a class action waiver by stating the conclusory allegation that it's "terms of use fall in the 'clickwrap' category." MTD at 14. But Defendant's argument fails for the same reasons discussed, *supra*. A party cannot be bound by a contract or term it didn't agree to, and here, because Plaintiff did not consent to the Terms (which contain the class action waiver), the terms are unenforceable. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014).

Online agreements fall on a spectrum ranging from "clickwrap" to "browsewrap." *Ghazizadeh v. Coursera, Inc*., 737 F. Supp. 3d 911, 923 (N.D. Cal. 2024). However, a true clickwrap agreement requires a user to "click an 'agree' button after being shown the terms of service." *Id*.; see e.g., *B.D. v. Blizzard Ent., Inc*., 76 Cal. App. 5th 931, 950 (2022) (wherein users were faced with a pop-up window requiring them to scroll though the terms before they could hit the I agree button). By contrast, here, the agreement box only appears after a user selects their payment method while the timer to purchase their ticket continues to tick down. Compl. ¶¶50–51. Indeed, once the checkout process begins, the timer does not stop, pressuring users to complete their purchase. *Id*. This website format is specifically intended to confuse and pressure consumers into completing their purchase in the allotted time, which contradicts California courts' tendency to shift the onus of creating clarity onto website creators. *Morrison v. Yippee Ent., Inc*., 756 F. Supp. 3d 842 (S.D. Cal. 2024); *Sellers*, 289 Cal. Rptr. 3d at 16–32 (collecting cases).

This Court should look to *Sadlock v. Walt Disney C*o., for guidance. 2023 WL 4869245, at *9 (N.D. Cal. July 31, 2023). In *Sadlock*, the court found the "screen at issue did not provide reasonably conspicuous notice" because "[t]he Subscriber Agreement is not mentioned at all until, in essence, the bottom of the screen" and "the Subscriber Agreement is in small font" and "comparatively, that font size is smaller than that used for other text in the payment webpage." *Id*. at *9. Here, in a manner similar to *Sadlock*, Defendant's website does not mention the Terms or Privacy Policy until after the customer fills out the first four sections of the checkout form, i.e., at the very end of the checkout process. Compl. ¶ 51; Compl. at Figure 5. Defendant even goes so far as to mask the appearance of this additional condition to consumers, by making sure it only appears "once the purchaser clicks their payment method (which then requires the purchaser to enter their information)." Compl. ¶ 51. Moreover, the ten-minute countdown effectively denies even the reasonably prudent user the opportunity to review the terms.

Because courts "must look to both 'the context of the transaction' and the 'placement of the notice' when conducting review under Berman" and neither of these factors weigh in favor of the Defendant, this Court should find the Terms and Conditions—and ultimately the class action waiver—unenforceable. *Keebaugh v. Warner Bros. Ent. Inc*., 100 F.4th 1005, 1019–1020 (9th Cir. 2024).

## IV. PLAINTIFF STATES A CLAIM UNDER CIPA § 631

### A. The First Clause of CIPA § 631(a) Applies to Defendant's Online Wiretaps

Defendant contends that Plaintiff cannot bring a claim under the first clause of CIPA § 631(a) because that section "concerns telephonic wiretapping specifically, which does not apply to the context of the internet." MTD at 15 n.4 (quoting *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1065 n.8 (C.D. Cal. 2023)). Defendant is wrong. Indeed, in *Jackson*, the court held that CIPA applied to the LinkedIn Insight Tag (a comparable tracking technology to the Facebook Tracking Pixel) and explained that "Section 631 applies to 'new technologies' such as computers, email, and the Internet." *Jackson v. LinkedIn Corp.*, 744 F. Supp. 3d 986 (N.D. Cal. 2024) (quoting *Matera v. Google Inc.*, 2016 WL 8200619, at *20 (N.D. Cal. Aug. 12, 2016)). In *Matera*, the court correctly reasoned that the "California Supreme Court . . . regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme." 2016 WL 8200619, at *20. After surveying California case law consistently applying this principle of law, the court in *Matera* concluded that "[b]ecause the California Supreme Court regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme, the Court is unpersuaded by Google's argument that CIPA can not apply to email because email did not exist at the time of CIPA's enactment." *Id.* In *Kauffman v. Papa John's Int'l, Inc.*, 2024 WL 171363, at *8 (S.D. Cal. Jan. 12, 2024), the court applied *Matera* and reasoned that "[r]eading the first clause of Section 631 to apply only to communications through a wire ignores the fact that a statute may be read to apply to

new technologies . . ." *See also id.* ("[t]hough written in terms of wiretapping, § 631(a) applies to internet communications") (quoting *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022)); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 930 (N.D. Cal. 2024) ("Giving effect to CIPA's broad statutory language is consistent with the California Legislature's stated intent to protect privacy interests, as well as the California courts' approach when applying statutes to new technologies.").

Plaintiff alleges that "Defendant aided, agreed with, and conspired with Facebook and other third parties to track and intercept Plaintiff's and Class Members' internet communications while accessing www.flixbus.com. These communications were intercepted without the authorization and consent of Plaintiff and Class Members." Compl. ¶ 72. Plaintiff therefore adequately pleads a violation of the first clause of CIPA.

**B. "Abetting" is Not An Element of § 631(a)(4)**

Defendant argues that Plaintiff's Section 631(a)(4) claim fails because "[e]ven if Facebook had violated any provision of CIPA, Plaintiff must still plausibly plead facts showing how FlixBus actually aided and abetted any of Facebook's alleged wrongdoing." MTD at 15. That is wrong.

Prong four of CIPA § 631(a) provides for liability when a person, "by means of any machine, instrument, contrivance, or in any other manner,…aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section." (emphasis added). Notably, missing from the plain statutory text is of Section 631(a)(4) is any reference to an "abetting" requirement. Had the legislature intended for "aids" to mean "aids and abets," it would have written the latter term instead of the former. *Cousin v. Sharp Healthcare*, 681 F.Supp.3d 1117, 1129–30 (S.D. Cal. 2023) ("Defendant's contention that 'aids' means 'aiding and abetting' ignores the 'agrees with, employs, or conspires with' language of the clause."); *In re Cell Tower Litig.*, 2012 WL 1903883, at *2 (S.D. Cal. May 24, 2012) ("The first step in

analyzing a statute is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning.") (citations omitted).

The legislature's use of the terms "aids," "agrees with," and "employs" indicates that CIPA § 631(a) was mean to apply to a much broader swath of non-criminal conduct, regardless of "specific intent." *See Cousin*, 681 F.Supp.3d at 1129–30. To that end, "aid" should be interpreted as "to give assistance,"[3] "agrees with" as "to concur in opinion or purpose,"[4] and "employs" as "to make use of" or "to hire."[5] In short, a defendant violates prong four where it simply enables another's wrongdoing. *See Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("[T]he complaint adequately alleges that [defendant] violated section 631 by enabling [a third party's] wrongdoing."). Here, the Complaint is replete with allegations that Defendant intentionally enabled Facebook's wrongdoing. *See, e.g.,* Compl. ¶ 7 ("Unbeknownst to Plaintiff Defendant assisted Facebook with intercepting his communications, including communications that contained his personally identifiable information and details regarding his private travel itinerary."); *Id.* at ¶ 33 ("Defendant integrate[d] the Facebook Tracking Pixel into its Website. Through this tracking pixel, Defendant assists Facebook in intercepting personally identifiable information, as well as several details about consumers' travel itineraries, including the date of travel and location of travel."); *Id.* at ¶ 48 ("Defendant uses other Business Tools, like Conversions API, to assist Facebook with intercepting its users' communications."). These allegations are sufficient to plead Defendant's violation of prong four of CIPA § 631(a). *See Cousin*, 681 F.Supp.3d at 1129–30. This Court should decline to follow *Esparza*, and limit its analysis to the plain text of the statute.

[3] *Aid*, Merriam-Webster Dictionary. http://www.merriam-webster.com/dictionary/aid.

[4] *Agree*, Black's Law Dictionary (11th ed. 2019).

[5] *Employ*. Black's Law Dictionary (11th ed. 2019).

### C. Plaintiff Alleges That His Communications Were Intercepted "In Transit"

Defendant argues that Plaintiff fails to establish that her communications were intercepted "in transit." MTD at 17. Contrary to Defendant's contention, Plaintiff has alleged that Meta intercepted his communications in transit:

> Take an individual who navigates to Defendant's website and enters their trip information (e.g. travel dates, departure city, arrival city, and trip dates). When that tab is clicked, the individual's browser sends a GET request to Defendant's server requesting that server to load the particular webpage. Because FlixBus utilizes the Facebook Tracking Pixel, Facebook's embedded code, written in JavaScript, sends secret instructions back to the individual's browser, without alerting the individual that this is happening. Facebook causes the browser to secretly duplicate the communication with Defendant, transmitting it to Facebook's servers, alongside additional information that transcribes the communication's content and the individual's identity.

Compl. ¶ 30. These allegations are sufficient because Plaintiff sets forth the precise means by which the communications were intercepted while "in transit," prior to reaching their final destination. Courts have found near identical allegations concerning interceptions through the Facebook Tracking Pixel to satisfy the "in transit" requirement. *See St. Aubin v. Carbon Health Technologies, Inc.*, 2024 WL 4369675, at *6 (N.D. Cal. Oct. 1, 2024); *see also Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 1078–79 (C.D. Cal. 2023) ("[Plaintiff] did not simply recite that there was real time interception, she added detail on how it occurs[.]"); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) (accepting allegations that communications occur "in transit" and explaining consideration of evidence to the contrary would be "premature" absent a "more developed factual record."); *In re Yahoo Mail Litig*., 7 F. Supp. 3d 1016, 1028 (N.D. Cal. 2014) (refusing to "assum[e]" communications are not intercepted in transit as they would "contradict[] Plaintiffs' allegations"). Plaintiff's allegations differ from those in *Barbour* because Plaintiff does not allege that the interceptions at issue here occur

"after the original transmission has been received." *Barbour v. John Muir Health*, 2023 WL 2618967, at *2 (Cal. Super. Ct. Jan. 5, 2023). The fact that Defendant attempts to cherry-pick language from Plaintiff's Complaint regarding Facebook's independent *use* of the information it intercepts does not change this analysis.

**D. Meta Intercepted the "Contents" of Plaintiff's Communications**

Defendant argues that Plaintiff's CIPA claim fails because he only alleges the interception of "record" information. MTD at 18–19. That is wrong.

CIPA § 631(a) prohibits the unauthorized disclosure of the contents of communications. Cal. Penal Code § 631(a). As used in § 631(a), "content" refers to the "intended message conveyed by the communication." *In re Meta Pixel Healthcare Litig.* ("*In re Meta Pixel*"), 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022). "Analysis of CIPA violations is the same as the analysis for the federal Wiretap Act, … and [u]nder the Wiretap Act, 'contents' is defined as 'any information concerning the substance, purport, or meaning of [a] communication.'" *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) (internal citations omitted). "[C]ontent" includes "the names of buttons clicked," *see In re Meta* Pixel, 647 F. Supp. 3d at 795, along with "search queries" and "the particular document" requested. *See Brown v. Google LLC*, 2023 WL 5029899, at *15 (N.D. Cal. Aug. 7, 2023); *see also Revitch*, 2019 WL 5485330, at *1 ("Revitch requested information from Moosejaw by clicking on items of interest; Moosejaw responded by supplying that information. This series of requests and responses – whether online or over the phone – is communication."). "Content" may also include "full-string, detailed URLs" that include "'the particular document within a website that a person views[.]'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605 (9th Cir. 2020); *see also In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) ("URLs (to the extent the URLs contain a user's search terms) implicate 'content' under the Wiretap Act.") (internal citations omitted).

Here, Plaintiff alleges that the contents of his communications were intercepted by Meta. For example, when consumers, including Plaintiff, entered their "passenger manifest record" information (including the dates and destination of their trip) through Defendant's Website, Defendant assisted Meta in intercepting the contents of those communications. Compl., Figures 2–3. Under California law, such information is the "content" of the communication, as opposed to mere record information, because it is the "intended message of the communication." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 795; *see also Revitch*, 2019 WL 5485330, at *1. Each of these interceptions is tethered to a unique Facebook ID, which Meta uses to identify its account holders. Defendant's argument that such information is merely "record" information is contrary to California law.

*In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106–07 (9th Cir. 2014) does not compel a different result. In *Zynga*, the URLs "at issue [] include[d] only basic identification and address information, not a search term or similar communication made by the user, and therefore d[id] not constitute the contents of a communication." *Zynga*, 750 F.3d at 1109. In its analysis, the Ninth Circuit contrasted this information with "a Google search URL [that] not only shows that a user is using the Google search engine, but also shows the specific search terms the user had communicated to Google." *Id.* at 1108 (citing *United States v. Forrester*, 512 F.3d 500, 510 n.6 (9th Cir. 2008). Here, as discussed above, Plaintiff's communications are more akin to the "Google search URL" described in *Zynga*.

Defendant's reliance on *Yoon* is misplaced, as that case concerned the use of session replay technology, not the Facebook Tracking Pixel. *See Yoon v. Lululemon USA, Inc.*, 549 F.Supp.3d 1073, 1077 (C.D. Cal. July 15, 2021) ("[Defendant] uses Quantum Metric software called "Session Replay" to capture a customer's interactions with [its] webpage.").

## V. PLAINTIFF STATES A CLAIM FOR INVASION OF PRIVACY

Defendant argues that Plaintiff fails to state a claim for invasion of privacy because he does not allege "a legally protected privacy interest" and that the conduct by Defendant does not amount "to a serious, egregious invasion of the protected privacy interest." MTD at 19-20. Defendant is wrong on both counts.

To state a claim for invasion of privacy under the California Constitution, a plaintiff must allege, "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest." *Armstrong v. Allied Ins. Co*., 2014 WL 12591844, at *5 (C.D. Cal. Aug. 19, 2014). In California, an individual has a legally protected privacy interest in "precluding the dissemination or misuse of sensitive and confidential information." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26 Cal. Rptr. 2d 834, 856, 865 P.2d 633 (1994). This includes basic personally identifiable information. *See Padron v. Lara*, 2018 WL 2213462, at *14 (E.D. Cal. May 11, 2018) ("California courts recognize a constitutionally protected interest in a person's name, address, and phone number.") (collecting cases). Although "routine collection of personally identifiable information as part of electronic communications" is unlikely to be highly offensive, the "collection of intimate or sensitive personally identifiable information may amount to a highly offensive intrusion." *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F.Supp.3d 1204, 1233 (C.D. Cal. Mar. 2, 2017). Here, Plaintiff's legally protected privacy interest is bolstered by the fact that the information disclosed by Defendant is specifically protected from disclosure under Cal. Civil Code § 53.5. California law mandates that "passenger manifest record" information is confidential. Indeed, Cal. Civil Code § 53.5(b) provides that an "an owner or operator of a private or charter bus transportation company, or any employee or agent thereof, shall not disclose, produce, provide, release, transfer, disseminate, or otherwise communicate, except to a California peace officer, all or any part of a passenger manifest record orally, in writing, or by electronic

or any other means to a third party without a court-issued subpoena, warrant, or order.".'' *See also* Cal. Civil Code § 53.5(d) ("'Passenger manifest record' for purposes of this section includes any record that identifies an individual guest, passenger, customer, or invitee, including, but not limited to, their name, social security number *or other unique identifying number*, date of birth, location of birth, address, telephone number, driver's license number, other official form of identification, credit card number, or automobile license plate number."). Cal. Civil Code § 53.5 was borne out of the State Legislature's concerns that

> [p]rotecting the privacy of personal information promotes consumer confidence and encourages both residents and visitors to travel to and within California and to patronize California businesses.
>
> Therefore, it is the intent of the Legislature to further Californian's right to privacy by ensuring that the personal information disclosed by patrons of lodging establishments and bus companies is used for the intended purposes and not improperly disclosed.

Compl. ¶ 19.

Plaintiff not only alleges the disclosure of PII, but also protected "passenger manifest record" information. By disclosing such information to third parties (e.g., Meta), Defendant committed a serious invasion of Plaintiff's and putative class members' protected privacy interest. *See id.* at ¶ 3. Defendant attempts to evade its legal obligations by characterizing its conduct as "routine commercial" behavior. MTD at 20. But Defendant was not permitted to share this protected information with Meta and makes no attempt to explain why it should not be required to fulfill its obligations to protect consumer information as required by California law. Cal. Civil Code § 53.5.

Defendant's attempt to liken the disclosures at issue here with a host of dissimilar cases, all of which are distinguishable from the present facts. *See, e.g., In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 973–74 (N.D. Cal. 2014) (no disclosure of information to third parties); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d

1010, 1025 (N.D. Cal. 2012) (plaintiffs failed to make a showing of what information was obtained by third parties). Accordingly, Plaintiff has done more than enough to establish a legally protected privacy interest and an egregious invasion of that privacy interest by the Defendant.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendant's motion in its entirety. Alternatively, if the motion is granted in any respect, Plaintiff should be given leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires; this mandate is to be heeded.'").

Dated: April 21, 2025

**BURSOR & FISHER, P.A.**

By: *<u>/s/ Sarah N. Westcot</u>*
Sarah N. Westcot

Sarah N. Westcot (State Bar No. 264916)
701 Brickell Avenue, Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
E-mail: swestcot@bursor.com

*Counsel for Plaintiff*