SEYFARTH SHAW LLP
Jesse L. Miller (SBN 183229)
jmiller@seyfarth.com
Jennifer R. Fearnow (SBN 246007)
jfearnow@seyfarth.com
Afshin Najafi (SBN 335582)
anajafi@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

Attorneys for Defendant
FlixBus, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES WASHINGTON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FLIXBUS, INC.,<br><br>Defendant. | Case No. 3:25-cv-00212-H-MSB<br><br>**DEFENDANT FLIXBUS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date: June 9, 2025<br>Time: 10:30 a.m.<br>Judge: Hon. Marilyn L. Huff<br>Courtroom: 12A |

## TABLE OF CONTENTS


**Page(s)**

I. PLAINTIFF FAILS TO ESTABLISH ARTICLE III STANDING .......... 1

II. THE ICCTA PREEMPTS PLAINTIFF'S CLAIMS .......... 3

III. PLAINTIFF CONSENTED TO THE ALLEGED DATA PRACTICES & CLASS ACTION WAIVER .......... 4

IV. PLAINTIFF FAILED TO STATE A CIPA CLAIM UNDER SECTION 631 .......... 7

V. PLAINTIFF FAILED TO ASSERT AN INVASION OF PRIVACY CLAIM .......... 10

VI. CONCLUSION .......... 10

# TABLE OF AUTHORITIES


**Page(s)**

**Federal Cases**

*Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ... 1

*Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259 (9th Cir. 1998) ... 4

*Cousin v. Healthcare*, 2024 WL 1184702 (S.D. Cal. Mar. 19, 2024) ... 8

*Cousin v. Sharp Healthcare*, 681 F.Supp.3d 1117 (S.D. Cal. 2023) ... 8

*Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251 (2013) ... 3, 4

*Esparza v. UAG Escondido A1 Inc.*, 2024 WL 3761293 (S.D. Cal. Aug. 5, 2024) ... 7, 8

*Fudge v. Delta Air Lines, Inc.*, 2024 WL 4445985 (C.D. Cal. Oct. 4, 2024) ... 4

*Ji v. Naver Corp.*, 2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) ... 1

*Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823 (S.D. Cal. June 12, 2023) ... 1

*Massie v. Gen. Motors LLC*, 2022 WL 534468 (D. Del. Feb. 17, 2022) ... 1

*Mikulsky v. Noom, Inc.*, 682 F.Supp.3d 855 (S.D. Cal. 2023) ... 1, 2

*Oberstein v. Live Nation Ent., Inc.*, 2021 WL 4772885 (C.D. Cal. Sept. 20, 2021), *aff'd*, 60 F.4th 505 (9th Cir. 2023) ... 5, 6

*Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505 (9th Cir. 2023) ... 5, 6

*Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ... 8

*Reyes v. Educ. Credit Mgmt. Corp.*, 773 F.App'x 989 (9th Cir. 2019) ... 7

*Rodriguez v. Ford Motor*, 2024 WL 4957566 (S.D. Cal. Dec. 3, 2024) ... 9

*Valenzuela v. Kroger Co.*,
2025 WL 851075 (C.D. Cal. Mar. 13, 2025) .......... 7, 9, 10

*In re Vizio*,
238 F.Supp.3d 1204 (C.D. Cal. Mar. 2, 2017) .......... 10

**State Cases**

*Barbour v. John Muir Health*,
2023 WL 2618967 (Cal. Super. Ct. Jan. 5, 2023) .......... 9

*Warden v. Kahn*,
99 Cal. App. 3d 805 (1979) .......... 7

**State Statutes**

Airline Deregulation Act .......... 4

Civil Code § 53.5 .......... 2

Civil Code § 53.5(i) .......... 2, 10

Civil Code § 53.5(d) .......... 2

Penal Code § 631(a) .......... 7

As discussed below, Plaintiff's Opposition fails to demonstrate why his Complaint should not be dismissed and, therefore, FlixBus' Motion to Dismiss should be granted.

**I. PLAINTIFF FAILS TO ESTABLISH ARTICLE III STANDING**

Here, as in *Lightoller*, Plaintiff's claims must be dismissed because he "has failed to adequately allege that []he suffered a concrete harm, and, therefore, Plaintiff has failed to satisfy the injury in fact element for Article III standing." *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *5 (S.D. Cal. June 12, 2023) (Huff, D.J.). In Opposition, Plaintiff claims that "a wiretap, by itself, constitutes a concrete injury." ECF No. 7 at 4. However, Plaintiff cannot premise his claim of injury solely based on FlixBus' alleged CIPA violation and his right to privacy. Indeed, "[t]he Supreme Court 'has rejected the proposition that a plaintiff automatically satisfies the injury in fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Lightoller*, 2023 WL 3963823, at *3 (quoting *TransUnion*, 594 U.S. 413, 426 (2021)). Consistent with *TransUnion*, other district courts have also rejected the contention that "any violation of CIPA necessarily constitutes an injury in fact without the need for an additional showing of harm." *Lightoller*, 2023 WL 3963823, at *3; *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023); *Massie v. Gen. Motors LLC*, 2022 WL 534468, at *2, 5 (D. Del. Feb. 17, 2022); *Ji v. Naver Corp.*, 2022 WL 4624898, at *7 (N.D. Cal. Sept. 30, 2022). Therefore, the alleged CIPA violation is not a legally cognizable harm that would confer Article III standing, because "an injury in law is not an injury in fact." *Lightoller*, 2023 WL 3963823, at *3.

Further, nothing in Plaintiff's Opposition demonstrates that he has pled a violation of a substantive privacy right. FlixBus' Motion highlighted Plaintiff's failure to allege the specific "personally identifiable information" he disclosed that implicates a protectible privacy interest. ECF No. 6-1 at 5-6. Accordingly, his claims did not bear "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," such as "disclosure of private information." *Mikulsky v. Noom, Inc.*, 682 F.Supp.3d 855, 864 (S.D. Cal. 2023) (Huff, D.J.). Plaintiff's Opposition does not

address this argument at all, and completely ignores—and even fails to cite—this Court's ruling in *Mikulsky*. Instead, Plaintiff swerves, claiming he established a concrete injury by alleging FlixBus "disclosed his 'passenger manifest record' information, which is protected information under California law[,]" citing to California Civil Code § 53.5. ECF No. 7 at 5. That argument fails for at least three reasons.

***First***, Section 53.5 does not prohibit the disclosure of passenger manifest records for all purposes. Section 53.5(i) permits "a private business . . . [to provide] business records to a third-party service provider that the private business contracts with for business-related services."[1] Plaintiff's Complaint concedes FlixBus did exactly that, by alleging the offending Pixel technology helps "website owners . . . integrate with Facebook, understand and measure their products and services, and better reach and serve people who might be interested in their products and services." Compl. ¶ 27. Plaintiff does not allege FlixBus or Facebook used Plaintiff's passenger manifest records for purposes other than business-related services. Stated differently, Section 53.5(i) codifies what courts have already held in privacy cases—that the dissemination of information like travel itinerary information for routine commercial purposes (i.e., marketing and advertising) alone is not sufficient to show an invasion of a protectible privacy interest. *See* ECF No. 6-1 at 6 (citing cases). ***Second***, the only "passenger manifest record" information Plaintiff alleges to have disclosed to FlixBus was "the departure and return date, the origin and destination cities, and the number of travelers in his party." Compl. ¶ 7. That information does not qualify as "passenger manifest record" information under Section 53.5.[2] Instead, the statute addresses the disclosure of specific information unique

---

[1] The Legislature enacted Section 53.5 because it was concerned by, among other things, news that that ICE officials were unconstitutionally boarding private buses and detaining passengers without reasonable suspicion to question them about their immigration status. S. Rules. Comm., Senate Floor Analyses, Cal. S.B. 1194 (Aug. 28, 2018). In other words, the intent of the Legislature was to protect citizens from government overreach—not to create a private right of action for plaintiffs to sue bus transportation companies.

[2] *See* Civ. Code § 53.5(d) (defining "passenger manifest record" as "any record that identifies an individual guest, passenger, customer, or invitee, including but not limited

to one passenger among all others with the same departure and return date, and origin and destination. Nowhere in his Complaint does Plaintiff allege the disclosure of any such information. As such, Plaintiff failed to allege any specific "personally identifiable information" disclosed; his travel details alone do not constitute "passenger manifest record" information. ***Third***, Section 53.5 does not include a private right of action; the Legislature specifically removed the private right of action from earlier versions of the law. *See* S. Rules. Comm., Senate Floor Analyses, Cal. S.B. 1194 (Sept. 28, 2018). Therefore, Plaintiff does not and cannot have a standalone cause of action under this law.

## II. THE ICCTA PREEMPTS PLAINTIFF'S CLAIMS

Plaintiff's Opposition also fails to demonstrate his claims are not preempted by the ICCTA or even acknowledge FlixBus' authorities. Rather, Plaintiff advances two incorrect arguments. ***First***, Plaintiff argues that his claims are not "related to" FlixBus' "services" for transportation of persons or property by relying on *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251 (2013). Plaintiff's argument misses the mark because *Dan's City* is inapposite. There, a vehicle owner brought suit under a New Hampshire law against a towing company that towed his vehicle and later traded it to a third party without compensating the owner. *Dan's City*, 569 U.S. at 254-55. The Court considered the ICCTA's preemption clause, which provides in part: "[A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." *Id.* at 254 (quoting 49 U.S.C. § 14501(c)(1)). The Court held that ICCTA did not preempt the plaintiff's state-law claims stemming from the storage and disposal of a towed vehicle because "they are unrelated to a 'service' a motor carrier renders its customers." *Id.* at 262. The Court reasoned that "[t]he transportation service Dan's City provided was the removal of Pelkey's car from his landlord's parking lot. That service,

---

to, their name, social security number, or other unique identifying number, date of birth, location of birth, address, telephone number, driver's license number, other official form of identification, credit card number of automobile license plate number")

which did involve the movement of property, ended months before the conduct on which Pelkey's claims are based." *Id.* at 262-63. Unlike *Dan's City*, plaintiff's claims stem from providing his information to purchase a bus ticket from a bus company for transportation, which squarely constitutes a transportation activity. *See, e.g.*, *Fudge v. Delta Air Lines, Inc.*, 2024 WL 4445985, at *4 (C.D. Cal. Oct. 4, 2024) (holding plaintiff's CIPA violation claim based on Delta Airlines' use of the Facebook pixel on its website "related directly to Delta's air transportation services" for preemption purposes). Tellingly, Plaintiff's Opposition completely avoids addressing FlixBus' analysis of *Fudge* (ECF No. 6-1 at 9 – 10), which is on all fours as to this case in demonstrating Plaintiff's claims are directly "related to" FlixBus' "services" under the ICCTA's preemption clause.

Second, Plaintiff argues that his claims are not related to FlixBus' services because, under *Charas*, 160 F.3d 1259 (9th Cir. 1998), "the term service 'refers to such things as the frequency and scheduling of transportation, and to the selection of markets to or from which transportation is provided[.]" ECF No. 7 at 9. This argument fails because Plaintiff's application of *Charas* is illogically narrow and misguided. As alleged, Plaintiff's claims arise from booking a bus ticket from a bus company for transportation—i.e., the scheduling of transportation. Without Plaintiff seeking FlixBus' transportation, and securing a scheduled route, Plaintiff would not have a claim. See, e.g., Compl. ¶¶ 78, 82. Notably, in the well-reasoned *Fudge* opinion (which Plaintiff avoided addressing), the court relied on *Chara* and its progeny to reach the conclusion that the plaintiff's CIPA claim "stem from their purchase of air travel online, having provided their information specifically for the purpose of accessing the airline's air **transportation services**." *Fudge*, 2024 WL 4445985 at *4. That reasoning equally applies here, as the statutory language of the ICCTA has been interpreted consistently with decisions interpreting the Airline Deregulation Act at issue in *Fudge*. *See* ECF No. 6-1 at 8.

## III. PLAINTIFF CONSENTED TO THE ALLEGED DATA PRACTICES & CLASS ACTION WAIVER

Plaintiff argues that he did not consent to the alleged data practices at issue in his

Complaint because (1) the countdown timer on FlixBus' checkout page did not give him a reasonable opportunity to review the Privacy Policy and Terms and Conditions, (2) FlixBus' website did not provide conspicuous notice of the Privacy Policy and Terms and Conditions, and (3) FlixBus cannot rely on Facebook's terms and conditions.[3] And, on the basis of the first two arguments, Plaintiff further argues the class action waiver in FlixBus' Terms and Conditions is unenforceable. All of his arguments fail.

Regarding his first two arguments, Plaintiff claims that "[t]he design and content of a website play a crucial role in providing users with sufficient opportunity to read the agreement, and here, Defendant's Website did the opposite" and cites to the Ninth Circuit opinion in *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505 (9th Cir. 2023). *Oberstein*, however, is on all fours in establishing that Plaintiff did consent to the alleged data practices. At issue in the district court level in *Oberstein* was whether the arbitration provision in Ticketmaster's online Terms of Use ("TOU") was enforceable. *See Oberstein v. Live Nation Ent., Inc.*, 2021 WL 4772885, at *1 (C.D. Cal. Sept. 20, 2021), *aff'd*, 60 F.4th 505 (9th Cir. 2023). Among other places, such as at the bottom of its website, Ticketmaster's TOU would appear at the final check-out page when purchasing a ticket. *Id.* at *2. The plaintiffs argued, in part, that the TOU was unenforceable because, after a user selected particular tickets for purchase, Ticketmaster's check-out process included a "countdown timer." *Id.* at *8. The court rejected that argument because (1) without the timer, "a user would have to choose their tickets and finalize their purchase as quickly as possible for fear of tickets selling out as the purchase was being completed . . . But with the [timer], a user is guaranteed up to fourteen minutes to complete their purchase[,]" and (2) the plaintiffs "were given constructive notice of the TOUs at several

---

[3] Plaintiff also attempts to mislead this Court by claiming FlixBus "has failed to cite *any* provision within its terms explicitly notifying consumers that their protected passenger manifest record information would be disclosed to third parties." ECF No. 7 at 12. To the contrary, FlixBus' Motion cited to such provisions. ECF No. 6-1 at 11 – 12. Further, FlixBus' Privacy Policy explicitly discloses the use of the pixel technology that Plaintiff complains of. See ECF No. 6-2 at 10 – 11, 18 – 19.

junctures and could have reviewed the TOUs at their leisure . . . while navigating the website, not only when making a purchase.” *Id.* Just like in *Oberstein*, Plaintiff’s arguments regarding the countdown timer on FlixBus’ website is of no import and should be disregarded because the timer guaranteed enough time for Plaintiff to complete his transaction without fear of the tickets selling out and he could have reviewed the Privacy Policy and Terms and Conditions at his leisure while navigating the website.

Just as Plaintiff argues here, the plaintiffs in *Oberstein* further argued that Ticketmaster’s checkout page (as depicted in the screenshot <u>below</u> from the opinion) was not sufficiently conspicuous to provide them with constructive notice of the TOU:




*Id.* at *2. The court disagreed, and the Ninth Circuit affirmed, because the website “[c]onspicuously placed right above the button that the user must press is text that indicates that the user agrees to the TOU by pressing the button. The text ‘Terms’ or ‘Terms of Use’ are in a different blue color, distinguishing the link from the surrounding text, and clicking on the link sends the user to a page on the website containing the full TOU.” *Id.* at *6. Here, Plaintiff’s argument that FlixBus’ website did not provide conspicuous notice must therefore also fail, as FlixBus’ website presents the Privacy Policy and Terms and Conditions in a more conspicuous manner than Ticketmaster did in *Oberstein* (by requiring users to affirmatively click a button confirming they have read the Privacy Policy and Terms and Conditions) as depicted in the following screenshot:




Compl. ¶ 51, Figure 5. And, since Plaintiff’s arguments regarding the enforceability of

FlixBus' Terms and Conditions fail, so too must his derivative arguments fail regarding the enforceability of the class action waiver barring his claims.

As to Plaintiff's argument regarding Facebook's terms and conditions, Plaintiff claims it does not exempt FlixBus from responsibility for its violation of law. Plaintiff is wrong because he bears the burden of proving he did not consent to the alleged "wiretapping." *See Reyes v. Educ. Credit Mgmt. Corp.*, 773 F.App'x 989, 990 n.1 (9th Cir. 2019). Therefore, in order to maintain FlixBus violated the law, Plaintiff must plead and prove that he did not consent to Facebook's alleged collection of the data at issue here, but has not done so. And, Plaintiff's argument that Facebook is not a party is a red-herring, as he admits maintaining a Facebook account "at all relevant times" (Compl. ¶ 6) and does not dispute that he consented to the alleged data practices he now complains of when he agreed to Facebook's terms and conditions.

## IV. PLAINTIFF FAILED TO STATE A CIPA CLAIM UNDER SECTION 631

***Direct Liability.*** Plaintiff incorrectly claims that he has adequately pled "a violation of the first clause of CIPA" against FlixBus. ECF No. 7 at 16. A claim under the first clause of CIPA is premised on a defendant's intentional and non-consensual act of wiretapping a communication to which it is not a party. Penal Code § 631(a); *see also Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979). Nowhere in his Complaint or Opposition does Plaintiff assert FlixBus wiretapped a communication to which it was not a party. As his Opposition concedes, Plaintiff only alleged that FlixBus "aided, agreed with, and conspired with Facebook and other third parties to track and intercept Plaintiff's and Class Members' internet communications while accessing www.flixbus.com." ECF No. 7 at 16. Therefore, Plaintiff has only attempted to plead an "aiding and abetting" theory found in the fourth clause of the CIPA statute.

***Aiding and Abetting.*** Plaintiff's aiding and abetting theory of liability likewise fails. Plaintiff failed to address *Valenzuela v. Kroger Co.*, 2025 WL 851075 (C.D. Cal. Mar. 13, 2025) and *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 3761293 (S.D. Cal. Aug. 5, 2024). Instead, Plaintiff relies on two other district court rulings. One of the cases

does not meaningfully engage the sufficiency of similar allegations of aiding and abetting. *See Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) (no substantive discussion beyond what the complaint alleged). The other case, which Plaintiff heavily relies on, is *Cousin v. Sharp Healthcare*, 681 F.Supp.3d 1117 (S.D. Cal. 2023).[4] In *Cousins*, the court rejected the defendant's argument that CIPA's fourth clause be construed as an "aiding and abetting" provision based on two rationales. *Id.* at 1130. First, it stated that defendant's interpretation "ignores the 'agrees with, employs, or conspires with' language" of the statute. *Id.* Second, there was a lack of authority supporting defendant's interpretation. *Id.*

Courts in this district have recently rejected *Cousin's* holding and reasoning. This Court should do the same. In *Esparza*, Judge Boggs walked through a well-reasoned analysis in addressing *Cousin*. 2024 WL 3761293 at *2 - *3. As to the first rationale, Judge Boggs reasoned that the only way one could "unlawfully" commit one of the enumerated wrongful acts under Section 631(a)(4) "is by acting 'intentionally' or 'willfully' . . . Thus, the absence of the word 'abet' does not negate any requirement of knowledge or intent under clause four." *Id.* The court further reasoned that "[t]his conclusion is buttressed by the criminal nature of section 631" and that the plaintiff's interpretation "also ignores that [i]n the absence of an explicit statutory scienter requirement, in California civil actions, the common law definition [of aiding and abetting] applies." *Id.* (citations and quotations omitted). As to the second rationale, Judge Boggs found that since *Cousin*, "other courts have interpreted clause four as an 'aiding and abetting' provision." *Id.* (citing *Heiting v. Taro*, 728 F.Supp.3d 1112 (C.D. Cal. 2024), *Valenzuela v. Kroger Co.*, 2024 WL 1336959 (C.D. Cal. Mar. 28, 2024), and *B.K. v. Desert Care*, 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024)). And, since *Esparza*, additional courts have followed suit in reaching the same finding. *See, e.g.*, *Rodriguez v.*

---

[4] Notably, the *Cousin* court later held it did not have subject matter jurisdiction over the case and vacated its prior dismissal orders, including the one Plaintiff cites in Opposition. *See Cousin v. Healthcare*, 2024 WL 1184702, at *10 (S.D. Cal. Mar. 19, 2024).

*Ford Motor*, 2024 WL 4957566 (S.D. Cal. Dec. 3, 2024); *Valenzuela v. Kroger*, 2025 WL 851075 (C.D. Cal. Mar. 13, 2025). Accordingly, this Court should follow the foregoing recent and better reasoned opinions in finding Plaintiff's mere allegation that that FlixBus violated CIPA by assisting Facebook in intercepting "PII" and travel details (Compl. ¶ 33) fails to sufficiently plead the "aiding and abetting" element.

***Interception in Transit.*** Plaintiff argues he has sufficiently alleged the communications at issue were "intercepted" while in transit to FlixBus because (1) his allegations are nearly identical to those in other cases where Court have found the interception element was adequately pled, and (2) because his allegations differ from those in *Barbour*, 2023 WL 2618967 (Cal. Super. Ct. Jan. 5, 2023), where the court found the allegations insufficient. As to Plaintiff's first argument, the cases he relies on do not meaningfully analyze why the allegations sufficiently plead the interception element. *See* ECF No. 7 at 19. As to *Barbour*, Plaintiff's argument is misleading because his allegations are identical to the *Barbour* allegations:

| **Plaintiff's Allegations (Compl. ¶ 30)** | **Allegations in *Barbour*, 2023 WL at *5** |
|---|---|
| "When that tab is clicked, the individual's browser sends a GET request to Defendant's server requesting that server to load the particular webpage. Because FlixBus utilizes the Facebook Tracking Pixel, Facebook's embedded code, written in JavaScript, sends secret instructions back to the individual's browser, without alerting the individual that this is happening. Facebook causes the browser to secretly duplicate the communication with Defendant, transmitting it to Facebook's servers, alongside additional information that transcribes the communication's content and the individual's identity." | "When that tab is clicked, the individual's browser sends a GET request to Defendant's server requesting that server to load the particular webpage. Because JMH utilizes the Facebook Pixel, Facebook's embedded code, written in JavaScript, sends secret instructions back to the individual's browser, without alerting the individual that this is happening. Facebook instructs the browser to secretly duplicate the unwitting individual's communication with JMH, transmitting it to Facebook's servers, alongside additional information that transcribes the communication's content and the individual's identity." |

Based on these allegations, the court in *Barbour* found that the "the duplication and sending of Facebook's secret code happens after the requests reaches its destination (John Muir's server). Plaintiffs have not alleged Defendant's 'interception' while 'in transit.'

Also, there are no allegations that Defendant attempted to learn of the information while in transit." *Id.* at *5. Since Plaintiff's allegations are identical to *Barbour*, this Court should hold that Plaintiff's allegations fail to sufficiently allege the interception element.

***Content.*** Plaintiff's arguments regarding the contents of the communications that were allegedly intercepted are unavailing. As discussed above, Plaintiff has failed to sufficiently allege the "PII" he disclosed and/or was intercepted when he purchased his bus ticket. Further, the cases Plaintiff cites discuss how "the names of buttons clicked" or "URLs" constitute content in inapposite circumstances and fail to demonstrate how his travel details constitute something more than mere "record" information, which fall outside the scope of a CIPA claim.

**V. PLAINTIFF FAILED TO ASSERT AN INVASION OF PRIVACY CLAIM**

In Opposition, Plaintiff's only arguments regarding his flawed invasion of privacy claim is that the disclosure of his "passenger manifest record" information was a serious invasion of his privacy and that FlixBus was not allowed to disclose such. Plaintiff's arguments, however, fail to recognize the exception under Civil Code § 53.5(i) for disclosure of the information for routine commercial purposes (as discussed above). Furthermore, Plaintiff fails to demonstrate how FlixBus' alleged conduct was an egregious breach of social norms because he cannot—his travel details are not "intimate or sensitive personally identifiable information[,]" the disclosure of which "may amount to a highly offensive intrusion." *In re Vizio*, 238 F.Supp.3d 1204, 1233 (C.D. Cal. Mar. 2, 2017). Furthermore, Plaintiff fails to address the authorities in FlixBus' motion where such egregious breaches were found (which are completely different than the allegations at issue here) and fails to cite to a single case where a court found similar alleged conduct constituted an egregious breach. Accordingly, Plaintiff's allegations fail to satisfy the elements of his invasion of privacy claim and, therefore, must be dismissed as well.

**VI. CONCLUSION**

For the foregoing reasons, this Court should grant FlixBus' Motion and dismiss Plaintiff's Complaint without leave to amend.

DATED: April 28, 2025

SEYFARTH SHAW LLP

By: */s/ Jesse L. Miller*
Jesse L. Miller
Jennifer R. Fearnow
Afshin Najafi

Attorneys for Defendant
FlixBus, Inc.